**RICH–TAUBMAN ASSOCIATES,**
Plaintiff,

v.

**STAMFORD RESTAURANT OPERATING COMPANY, INC., Jack B. Levine, Paula A. Levine, Peter L. Aschkenasy, Dorothy Aschkenasy, Urban Archaeology, Ltd. (Inc.), Gilbert Shapiro, American Metal Restaurant Equipment Co., Inc., Jack Freeman, Judith Stockman and All Building Construction Corporation, Defendants.**

**TKUD ASSOCIATES NO. 2, Plaintiff,**

v.

**SHORT HILLS RESTAURANT OPERATING COMPANY, INC., et al., Defendants.**

**83 Civ. 7413 (RLC), 83 Civ. 7412 (RLC).**

United States District Court,
S.D. New York.

June 6, 1984.

Baer, Marks & Upham, New York City, for plaintiffs; Eugene R. Scheiman, Joshua B. Parker, New York City, of counsel.

Herrick & Feinstein, New York City, for All Building Const. Corp.; James A. Moss, Peter C. Kirschenbaum, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This case arises from the collapse of plaintiffs' plans to build two restaurants, one in Stamford, Connecticut, the other in Short Hills, New Jersey. Rich-Taubman Associates ("Rich-Taubman") and TKUD Associates No. 2 ("TKUD"), the plaintiffs, have sued several parties alleging, *inter alia*, that they conspired to convert plaintiffs' money, fraudulently concealed the fact that they were working to do so, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The case is before the court on a motion to dismiss by defendant, All Building Construction Corporation ("All Building"), on grounds that certain claims in the complaints fail to meet the specificity requirements of Rule 9(b), F.R.Civ.P., and that consequently, the court is deprived of subject matter jurisdiction.[1] All Building also raises an issue with regard to the sufficiency of the RICO pleadings. Having considered these questions, the motion to dismiss is denied.

*Background*

Each plaintiff, in the capacity of landlord, entered into a lease agreement with certain of the defendants, (the builder defendants), as tenants, for property in the Stamford Town Center and the Mall at Short Hills. Each plaintiff agreed to provide financial backing for the defendants, and the defendants agreed to design, construct, furnish and equip restaurants on plaintiffs' properties. Pursuant to the lease agreement, plaintiffs provided defendants with access to loans totaling $1,500,000 to build the restaurants at each location.

The builder defendants hired the second group of defendants in this action, the vendor defendants, including All Building, to perform the work on plaintiffs' properties. Plaintiffs claim that although the builder defendants disbursed checks totaling almost $1,500,000 to the vendor defendants, the checks were never put to their intended use. Instead, plaintiffs maintain, the vendor defendants cashed the checks and immediately wrote checks to one of the builder defendants or to other entities in which the builder defendants had a substantial economic interest.

According to plaintiffs, each vendor defendant acted in precisely the same manner in laundering the checks. Plaintiffs also charge several defendants, excluding All Building, with fraudulently concealing their participation in the scheme to convert plaintiffs' funds by issuing invoices and receipts which certified falsely that goods or services had been rendered.

Three claims were made against All Building based upon its participation in the alleged conversion scheme. Count 6 of the complaints charges All Building, along with the other vendor defendants, with violation of RICO. (¶ 63–67). Count 7 is a claim against All Building and the vendor and builder defendants for conspiracy to convert. (¶ 68–76). Count 11 alleges that All Building was unjustly enriched in the amount of $130,000 which it received from plaintiff Rich-Taubman.

*Motion to Dismiss*

### 1. RICO

Although not spelled out in the complaint, Count 6 apparently charges All Building with violating § 1962(c) of RICO.[2] Under this section it is illegal for individuals "employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlaw-

---

**1.** On December 21, 1983 the court accepted *Rich-Taubman Associates v. Stamford Restaurant Operating Co., Inc., et al.* as a case related to the TKUD case against the same defendants. The court affords counsel until June 25, 1984, to submit, if they desire, reasons to the court why the two cases should not be consolidated for all purposes.

**2.** 18 U.S.C. § 1964(c) creates a private right of action for violation of § 1962 of RICO. *See Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1285, 1287 (7th Cir.1983).

ful debt." 18 U.S.C. § 1962(c).[3] The elements of this RICO claim are the same whether the case is civil or criminal. *Eaby v. Richmond,* 561 F.Supp. 131, 133–34 (E.D.Pa.1983); *accord Eisenberg v. Gagnon,* 564 F.Supp. 1347, 1352 (E.D.Pa.1983). Plaintiffs must prove both the existence of an enterprise and a connected pattern of racketeering activity. *United States v. Zang,* 703 F.2d 1186 (10th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983) citing *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

Plaintiffs allege that in early 1982, all builder and vendor defendants joined forces to formulate a scheme to convert checks issued by or drawn on plaintiffs' bank accounts. (¶ 63). This association, plaintiffs maintain, constituted an "enterprise" as defined by the act. 18 U.S.C. § 1961(4). Plaintiffs claim that this enterprise, through use of the mail and telephone, engaged in fraudulent acts constituting a pattern of racketeering activity within 18 U.S.C. § 1961(5). (¶ 66). The alleged RICO violation is claimed to have cost plaintiffs approximately $3,000,000 in damages.

All Building does not dispute the sufficiency of the pleadings with respect to the "enterprise" allegations.[4] What All Building does contest is the adequacy of the pleadings with regard to its commission of "a pattern of racketeering activity". That phrase means "at least two acts of racketeering activity, one of which occurred after the effective date of ... [the act] and the last of which occurred within ten years ...

after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Specifically listed predicate offenses define, in turn, what is considered as racketeering activity under the act. 18 U.S.C. § 1961(1). The list includes federal offenses such as mail fraud, (18 U.S.C. § 1341), and wire fraud, (18 U.S.C. § 1343). *See Minpeco, S.A. v. ContiCommodity Services, Inc.,* 558 F.Supp. 1348 (S.D.N.Y.1983) (Lasker, J.).

■ F.R.Civ.P. 9(b) requires that allegations of fraud be set forth with "particularity", *see Posner v. Coopers & Lybrand,* 92 F.R.D. 765, 768 (S.D.N.Y.1981) (Goettel, J.) *aff'd,* 697 F.2d 296 (2d Cir.1982), citing *Denny v. Barber,* 576 F.2d 465 (2d Cir. 1978), and the rule applies with equal force to allegations of mail and wire fraud as predicate RICO civil offenses. *Eaby v. Richmond, supra,* 561 F.Supp. at 136. All Building maintains that Rule 9(b) has been ignored in this case because plaintiffs have failed to identify instances in which All Building committed such fraudulent acts. Citing this defect in its reply memorandum, All Building argues further that plaintiffs have failed to state a RICO claim upon which relief can be granted. F.R.Civ.P. 12(b).

Plaintiffs concede that they have not shown that defendant All Building actually committed a pattern of racketeering activity. But, they claim, there is no need for such a showing in this case since the enterprise alleged was also a conspiracy. In consequence, an actionable wrong of any one of the defendants in the enterprise,

---

**3.** For a detailed picture of RICO's legislative history and purpose, *see United States v. Ivic,* 700 F.2d 51, 60–65 (2d Cir.1983). *See also* Bradley, *Racketeers, Congress, and the Courts: An Analysis of RICO,* 65 Iowa L.Rev. 837 (1980).

**4.** Enterprise is defined as including "any individual partnership, corporation, association, or other legal entity, ... any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), and any combination thereof. *United States v. Huber,* 603 F.2d 387, 393–93 (2d Cir.1979) *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). As required, the enterprise alleged here exhibits: (1) a common or shared purpose—to convert

plaintiffs' funds; (2) some continuity of structure and personnel—it was comprised of individuals and entities associated for the duration of the restaurants' construction; and (3) an ascertainable structure distinct from that inherent in the conduct of the pattern of racketeering—the enterprise had a purpose and engaged in acts apart from those of mail and wire fraud. *See United States v. Lemm,* 680 F.2d 1193, 1197–98 (8th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983). In addition, *United States v. Turkette, supra,* made plain that a wholly illegal enterprise is within the scope of RICO.

such as mail fraud, may be imputed to the other defendants because "the significance of an allegation of conspiracy ... is to charge that an actionable wrong was committed jointly by the defendants." *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1074 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978).

All Building cannot demonstrate why the above general rule applicable to conspiracies should be held inapplicable in the RICO context. A requirement that a violation of § 1962 of RICO can be asserted only against a party that has engaged in the unlawful conduct proscribed by the Act, *Parnes v. Heinold Commodities Inc.*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982), is not a restriction as to the means by which the commission of such proscribed conduct may be established.

■ Nor is it the case, as All Building implies, that application of the conspiracy rule in RICO situations will allow findings of substantive RICO violations based solely upon a defendant's participation in an illegal RICO enterprise. Even in the case where a conspiracy forms the basis of the alleged illegal enterprise, plaintiff must still prove that one member of the conspiracy committed at least two predicate acts as required, 18 U.S.C. § 1961, in furtherance of the conspiracy's purpose. In cases where the alleged enterprise is not also a

conspiracy, concepts founded on conspiracy law will have no place in determining the existence of a RICO violation. A plaintiff will have to adduce by other means sufficient proof of a defendant's participation in the conduct of the enterprise through a pattern of racketeering activity.

■ One court, in finding that the complaint before it failed to allege that a certain defendant's conduct amounted to racketeering activity, noted "most importantly" that plaintiffs had not alleged that another defendant's demonstrated misconduct was attributable to the former defendant or the product of any conspiracy between the two. *Eaby v. Richmond, supra*, 561 F.Supp. at 135. Inescapable is the implication that where facts have been pleaded that, as a matter of law, allow the court to attribute the predicate acts of one defendant to another, a RICO violation will have been sufficiently alleged against that defendant. In charging that All Building was part of a conspiracy to convert funds[5] and that members of that conspiracy committed at least two acts of mail and wire fraud, a pattern of racketeering activity under the act, plaintiffs have, therefore, adequately stated a claim against All Building.

■ It is nevertheless true that the court must insure that the pleadings of fraud conform to the requirements of Rule 9(b). Plaintiffs have set forth when various mail-

---

**5.** All Building's argument that a conspiracy has not been alleged is unpersuasive. All Building maintains that plaintiffs have not shown facts suggesting that All Building knew or should have known of the existence of other vendors nor that All Building agreed to enter into the conspiracy. Such a showing has not been made directly, but inferences easily drawn from the facts pleaded adequately support the conspiracy charge.

In most cases, in fact, courts infer a conspiracy from indirect evidence, and this is true even though the required inferences may be complicated, as where alleged conspirators perform different acts at different times in different places. *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C.Cir.1983); *see Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir.1971). The facts alleged here are far less demanding. The alleged acts of all vendor defendants were identical. Although given the scheme alleged,

the exact timing and location of the defendants' acts were irrelevant, the complaint indicates that the funds were drawn from plaintiffs' accounts and passed to vendor defendants within a five month period, and shortly thereafter, before the end of 1982, were kicked back by all vendor defendants, including All Building, to builder defendants. Furthermore "a plaintiff seeking redress need not prove that each participant in a conspiracy knew the 'exact limits of the illegal plan or the identity of all participants therein.' *Hoffman-LaRoche, supra* 447 F.2d at 875." *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir.1979), *rev'd in part*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

All Building's offer of a legitimate way to interpret the facts notwithstanding, its pattern of behavior falls readily within the framework of the alleged conspiracy. *See Kajtazi v. Kajtazi*, 488 F.Supp. 15, 21 (E.D.N.Y.1978).

ings occurred, their contents, the nature of the misrepresentations made, to whom they were sent, and, in at least several allegations, by whom they were forwarded. (See ¶ 37, 44, 40 and 57). Although the complaint does not provide detail concerning alleged instances of wire fraud, and relies to some extent upon pleadings based on information and belief, more cannot be demanded where, as here, many of the relevant facts are solely within the defendants' knowledge. *Merrit v. Libby, McNeill & Libby*, 510 F.Supp. 366, 373 (S.D.N.Y.1981) (Owen, J.).

█ It is necessary that the defendants be given enough information to allow them to frame a responsive pleading and that the court be assured that an adequate basis exists for the charges made. *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir.1982); *Denny v. Barber, supra.* By alleging specific misrepresentations by the defendants through use of the mails concerning the rendering of goods or services by the vendor defendants, plaintiffs have satisfied those conditions in this case. Accordingly the motion to dismiss the RICO count pursuant to Rule 9(b) is denied.

2. *The Conspiracy to Convert Claim*

█ All Building misconstrues plaintiffs' conspiracy to convert claim as one for fraud. The counts for fraudulent concealment of the conversion scheme and the count for conspiracy to convert are separately pleaded, and therefore, the latter need not meet the special pleading requirements of Rule 9(b). The conspiracy to convert claim is otherwise adequately stated. *See supra* note 5.[6]

*Conclusion*

Because the RICO claim is properly alleged, the court may retain jurisdiction of

the conspiracy to convert and unjust enrichment claims.

IT IS SO ORDERED.

---

**6.** While civil conspiracy is not, in and of itself, actionable in New York, *Powell v. Kopman,* 511 F.Supp. 700, 704 (S.D.N.Y.1981) (Lasker, J.), this means only that plaintiff may not charge defendants with conspiracy for an action that if committed by a single individual would not constitute a tort. *See Mackie v. LaSalle Indus.*

*Inc.,* 92 A.D.2d 821, 460 N.Y.S.2d 313, 316 (1st Dep't.1983). Conversion is clearly a tort and defendant's objections on this score are, therefore, without merit. *See Merkel Assoc., Inc. v. Bellofram Corp.,* 437 F.Supp. 612 (W.D.N.Y. 1977).