The CITY OF NEW YORK, Plaintiff,

v.

JOSEPH L. BALKAN, INC., Paul Balkan, David Balkan, Harris Water Main & Sewage Contractors, Inc., Amos Bacon, Byrne & Sons, Inc., Joe Reid Excavating Co., Joseph Reid, John Cannetti, Mirabile Plumbing & Heating Corp., A & C Plumbing & Heating Contractors, Norton Plumbing & Heating Corp., Mario Durso Plumbing & Heating Co., J & H Excavating Co., K & K Sewer Construction, Inc. d/b/a Kelly Brothers Sewer Contractors, Nat Kelly, Pace Plumbing Corp., Donald McManus, Richard McInerney, Sidgo Plumbing Corp., Division Water Systems, Inc., Joseph Malone, Paul Malone, Lawrence O'Mara, Nick DeLuca, Vincent Careccia, Nandlal Jethani and John and Jane Does 1–100, Defendants.

No. 86 C 1428.

United States District Court,
E.D. New York.

March 23, 1987.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York (Michael D. Young, Martin C. Aronchick and Peter H. Lehner, New York City, of counsel), for plaintiff.

Peter J. Maloney, New York City, for defendants Joseph L. Balkan, Inc. and Paul Balkan.

Harold B. Foner, New York City, for defendant David Balkan.

Kobrick & Rosen (Saul Kobrick, New York City, of counsel), for defendants Harris Water Main & Sewer Contractors and Amos Bacon.

Barry Lieberman, New York City, for defendants Byrne & Sons, Inc., Joe Reid Excavating Co. and Joseph Reid.

Peter E. Tomasso, Kew Gardens, N.Y., for defendant John Cannetti.

Crowe, Deegan, Tenke, Stern, Polin & Prisco (Andrew D. Polin, Glen Cove, N.Y., of counsel), for defendant Mirabile Plumbing & Heating Corp.

Menaker & Herrmann (Richard G. Menaker, New York City, of counsel), for defendant Norton Plumbing & Heating Corp.

Ernest J. Belfi, Rockville Centre, N.Y., for defendant Mario Durso Plumbing & Heating Co.

Fred Seliger, Flushing, N.Y., for defendants K & K Sewer Construction and Nat Kelly.

Meissner, Tisch & Kleinberg (Ronald M. Kleinberg, Laurel J. Weinberg and Richard A. Finkel, New York City, of counsel), for defendants Pace Plumbing, Donald McManus and Richard McInerney.

Ackerman & Raphan (Mitchell Glicksman, Oceanside, N.Y., of counsel), for defendant Sidgo Plumbing Corp.

Andrew M. Lawler, P.C. (Andrew M. Lawler, Maurice M. McDermott and Sharon D. Feldman, New York City, of counsel), for defendants Division Water Systems, Inc. and Paul Malone.

Richard C. Carlsen, Glendale, N.Y., for defendant Lawrence O'Mara.

Norman C. Morse, Staten Island, N.Y., for defendant Nicholas DeLuca.

Richard L. Gumo, No. Bellmore, N.Y., for defendant Vincent Careccia.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

The City of New York ("the City") brings this action for damages against fourteen plumbing and excavating contractors and associated individuals and against four former City sewer inspectors. The complaint alleges, in substance, that the contractors during 1975 to 1984 bribed the inspectors and the inspectors accepted the bribes, all pursuant to corrupt schemes to evade the City inspection regulations or to avoid inspections entirely. The City claims the inspectors regularly signed fraudulent inspection certificates and had them mailed to the contractors in furtherance of the corrupt schemes.

The complaint alleges (1) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d) (1982), against both the contractors and the inspectors, (2) common law inducement of breach of fiduciary duty against the contractors and breach of fiduciary duty against the inspectors, (3) common law fraud and civil conspiracy against both the contractors and the inspectors, and (4) a right to restitution from the inspectors. Jurisdiction is based on 28 U.S.C. § 1331 (1982) and 18 U.S.C. § 1964(1) (1982), because a federal question is alleged, and on pendent jurisdiction.

Various of the defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, to sever the claims against them (Rule 20), to order separate trials of the defendants (Rule 42(b)), to require more particularized pleading (Rule 9(b)), and to require the claims against each defendant to be stated in separate paragraphs (Rule 10(b)).

## I. FACTS

On the motions to dismiss the court accepts as true the facts alleged in the complaint, and construes them in favor of the City. *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). Those facts are, in substance, as follows.

The Bureau of Sewers ("the Bureau"), a part of the New York City Department of Environmental Protection ("the Department"), employed defendants O'Mara, DeLuca and Careccia as sewer inspectors from 1975 to 1984. Defendant Jethani was employed as a sewer inspector from 1983 to 1984. From 1975 to 1984, the City required that new connections, repairs or plugs of private building sewer lines connecting to the City sewer system be made in accordance with City regulations. Sewer inspectors were responsible to require compliance by inspecting and supervising the work. The sewer inspectors acted as agents of the City and owed it a fiduciary obligation of good faith and loyalty.

From 1975 to 1984, the contractors (each referred to hereafter by the initial name in the company name), their employees or, in some cases, their excavating subcontractor falsely represented in permit applications to the Department that sewer connection, repair or plugging work on private building sewer lines would be done in accordance with City regulations. In reliance on these representations, the Department issued a permit for the work. Under normal practice, the work site would be excavated, a sewer inspector would be present as the work was performed, and the sewer inspector would then execute a certificate of inspection stating that he had inspected the work and that it had been properly performed. The certificate would be filed with the Department, which would mail a copy to the contractor, enabling payment by the contractor's employer.

However, the contractors or employees acting on their behalf agreed to bribe the inspectors and thus obtain certificates for work not properly performed and inspected. The contractors paid the sewer inspectors $5 to $20 per certificate of inspection to induce them improperly to exercise their discretion and make false representations in the certificates. The illegal payments include, but are not limited to, those made to O'Mara from May to July of 1983. As to these payments, the complaint sets forth the number of payments, the approximate period during which they were made, the

number of sites to which they related, the approximate location of the work sites involved, and the defendants responsible for making them.

O'Mara received illegal payments believed to total $100,000, including 12 payments between August 1983 and July 1984, throughout the period from 1975 to 1984. He pled guilty to violating the Hobbs Act, 18 U.S.C. § 1951 (1982) and the mail fraud statute, 18 U.S.C. § 1341 (1982) in August 1984. DeLuca received payments believed to total $100,000, including 5 payments between October 1983 and June 1984, during the 1975 to 1984 period, and pled guilty to violating the same statutes in September 1984. Careccia received payments believed to total $100,000, including 9 payments between August 1983 and May 1984, during the period, and pled guilty to violating the Hobbs Act and mail fraud statutes in November 1984. Jethani received payments believed to total $20,000 during the period, including 2 payments in August and September 1983, and pled guilty to violating the same statutes in November 1984.

The result of this corrupt activity is that improper sewer work has undermined the structural integrity of portions of the City's sewer system, reducing their life expectancy and causing substantial expense due to repairs or maintenance problems. The City has been deprived of its sewer inspectors' faithful and loyal performance and has been injured by diminished public confidence in the integrity of its sewer inspection process.

## II. RICO CLAIMS

The City's first and fifth causes of action allege that the contractors and the sewer inspectors, respectively, violated section 1962(c) of RICO, 18 U.S.C. § 1962(c) (1982). That section makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

The "enterprise" alleged is the Bureau of Sewers, which assertedly was engaged in and affected interstate commerce from 1974 to 1984. In carrying out their schemes the contractors allegedly agreed to and did pay bribes to corrupt sewer inspectors in violation of N.Y. Penal Law § 200.00 (McKinney 1987 Supp.) and caused certificates of inspection and other matter to be mailed in violation of 18 U.S.C. § 1341 (1982) (mail fraud). The sewer inspectors allegedly agreed to and did accept the bribes in violation of N.Y. Penal Law § 200.10 (McKinney 1987 Supp.) and caused multiple mailings of certificate inspections and other matter in violation of 18 U.S.C. § 1341 (1982) (mail fraud). Violation of these statutes constitutes "racketeering activity" as defined by Section 1961(1) of RICO, 18 U.S.C. § 1961(1) (1982).

The City's second and sixth causes of action against the contractors and sewer inspectors, respectively, allege a violation of section 1962(d) of RICO, 18 U.S.C. § 1962(d) (1982), which makes it unlawful for "any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of [Section 1962]."

### A. Government Use of Civil RICO

■ Pace contends that the City is not entitled to sue for treble damages under section 1964(c) of RICO, 18 U.S.C. § 1964(c) (1982), because the language and legislative history of the statute show that such a remedy is only available to private parties. However, section 1964(c) states that "any person injured in his business or property by reason of a violation of section 1962" may sue for treble damages, and "person" is broadly defined in 18 U.S.C. § 1961(3) as including "any individual or entity capable of holding a legal or beneficial interest in property." Moreover, the legislative history of RICO shows, and the Second Circuit has held, that Congress intended that RICO apply to corruption and infiltration of local governmental units. *United States v. Angelilli*, 660 F.2d 23, 31–35 (2d Cir.1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982). *See also Illinois Department of Revenue v.*

542

*Phillips,* 771 F.2d 312, 314–17 (7th Cir. 1985).

### B. Existence of an Enterprise

■ Mirabile and Norton contend that the complaint does not properly allege that the Bureau of Sewers is an "enterprise." Mirabile argues that plaintiff cannot be permitted "to use its own agency for extortion and then claim its victims to be connected with it in an 'enterprise.'" However, the complaint does not allege that plaintiff used "its own agency" for extortion, but rather alleges that its own agency was one of the victims.

Norton argues that since it is established law that a culpable "person" must be distinct from the "enterprise," *a fortiori* the plaintiff must be distinct from the "enterprise," citing *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986) and cases cited. That case merely held that the "person" employed by or associated with the "enterprise" who in violation of section 1962(c) conducts its affairs through a pattern of racketeering activity cannot be the "enterprise" itself. Here the complaint does not allege that the "enterprise," the Bureau of Sewers, violated RICO. As the *Bennett* case recognized, "the enterprise itself is often a passive instrument or victim of racketeering activity." 770 F.2d at 315.

Norton also contends that to allow the City to sue for misconduct of its own department would impermissibly expand civil RICO. The Seventh Circuit rejected a similar argument in *Schacht v. Brown,* 711 F.2d 1343, 1359–60 (7th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983).

### C. Standing to Sue Under RICO

Pace, Harris, Mirabile, Mario Durso, Division and Norton all contend that the City lacks standing. They cite *Sedima, S.P. R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985), which holds that a plaintiff has standing only to the extent that he has been injured in his business or property by

the RICO violation. *See* 18 U.S.C. 1964(c) (1982).

■ Pace argues that because the City knew about some payments to O'Mara, it benefited from the furtherance of an undercover investigation, or at least was in a position to correct sewer system problems. Pace also says that the City has not shown "specifically" how the alleged conduct caused injury or indeed shown any injury at all. Pace's first argument improperly assumes facts not alleged in the complaint. In any event, the City alleges repeated bribery of several sewer inspectors and mail fraud for a period of almost 10 years, and it is frivolous to contend that the City's ultimate discovery of the scheme eliminated all existing damage to its sewer system. Pace's second argument, which Mirabile has joined, is equally insubstantial. The City alleges that defendants' conduct damaged the integrity of the system. It is clear from the facts alleged that improper sewage work at tie-in sites caused this injury.

■ Harris, joined by Sidgo, argues that because the City claims defendants schemed to defraud it of the honest conduct of government affairs and faithful sewer inspector performance, its damages are only intangible and non-pecuniary, not the "injury to business or property" which RICO requires. Mario Durso makes the same arguments. The City has pled more than intangible damages by asserting that defendants' conduct resulted in tangible injury to the City sewer system.

■ Mario Durso denies that its work has caused any damage to the City sewer system and adds that the City has not specifically alleged how that work caused such damage. Division makes a similar argument. Specific evidence of the way improper work damaged the city sewer system need not be pled. *See* Federal Rule of Civil Procedure 8(a)(2). Mario Durso may urge at trial the claim it did not inflict damages on the City.

Division argues that from May 1983 O'Mara was cooperating with the City and that the City should therefore be estopped

from claiming injury flowing from the specifically alleged Division payments to him. The complaint does not allege that O'Mara was cooperating. In any event the complaint alleges that predicate acts of bribery and mail fraud over almost 10 years caused the damage, and injury caused prior to May 1983 is sufficient to sustain the City's standing to bring its RICO claims. The court need not decide now Division's further argument, also made by Mirabile, that the City cannot recover for intangible damages such as deprivation of its inspectors' loyal performance or diminution of public confidence. The City has adequately alleged tangible damage to its sewer system.

■ Norton contends that the City has not alleged a proximate causal relationship between Norton's alleged misconduct and the City's alleged injuries. Norton points out that the complaint states that Norton worked on private building sewer lines, not directly on the City sewer system under contract or otherwise. However, the complaint alleges that damage occurred because corrupted inspectors did not detect or report improper tie-ins between private sewer lines and the City sewer system, and it is irrelevant that the contractors who caused this injury were privately employed. It is certainly reasonable to infer from the facts alleged that this damage was foreseeable, if not intended. Norton's further contention, apparently also made by Mirabile, that the inspectors, not the contractors, caused the City's injury, merely disputes the facts alleged in the complaint, which the court accepts as true on these motions. *Dahlberg, supra.*

### D. Failure to Exhaust Administrative Remedies

■ Harris, Mirabile, Mario Durso and Norton further contend that the complaint should be dismissed because the City has not exhausted its administrative remedies. All assert that because the City's Environmental Control Board is empowered to enforce City sewer regulations that Board must render a decision before the City can allege evasions and violations of the regulations. No defendant, however, cites any

authority indicating that the Board has exclusive jurisdiction over whether sewer regulations have been violated or that the City is bound to obtain a Board determination before suing for violation of its regulations. Moreover, RICO, unlike other federal statutes, contains no exhaustion requirement.

### E. Effect on Interstate Commerce

■ Mirabile argues that the complaint fails to allege that the Bureau of Sewers operates in interstate commerce. This argument is meritless. The complaint does so allege. Norton contends that because the Bureau's responsibilities are "strictly municipal and intrastate" and all the activities alleged in the complaint occurred in New York City, the RICO claims fail. However, it is sufficient if the "activities of [the enterprise] affect" interstate commerce. 18 U.S.C. § 1962(c) (1982). A minimal showing of such effect at trial is all that is required. *See United States v. Barton,* 647 F.2d 224, 233–34 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); *Meineke Discount Muffler Shops, Inc. v. Noto,* 548 F.Supp. 352, 354 (E.D.N.Y.1982).

### F. Association with the Enterprise

Pace, Mirabile and Norton contend that they are not "associated with" the Bureau of Sewers as the statute requires. 18 U.S.C. § 1962(c) (1982).

■ Pace argues it was not "associated with" the Bureau because the alleged predicate acts were crimes against rather than in furtherance of the Bureau's affairs and because Pace dealt with corrupt Bureau employees, not the management level of the enterprise. There is, of course, no requirement in the statute that the crimes further the goals of the enterprise. *United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). The case on which Pace relies was reversed in *United States v. Yonan,* 800 F.2d 164 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 930, 93 L.Ed.2d 981 (1987), which held that an attorney who bribes an assistant state prosecutor to influence the disposition

of cases is "associated with" the prosecutor's office merely by conducting business with it. Similarly, *United States v. Bright*, 630 F.2d 804 (5th Cir.1980) held that "association with" a sheriff's office was established by proof that a defendant bribed the sheriff, or acted as a bagman for the sheriff, or collected payoff money on the sheriff's behalf. *Id.* at 829–34.

Pace also contends that at most, the complaint alleges Pace paid "a corrupt inspector who was off on his frolic." In fact, the City has alleged both a continuing regulatory relationship between the contractors and the Bureau and the systematic payment of bribes to corrupt Bureau employees and evade city regulations.

■ Mirabile contends that it is a victim of extortion and thus cannot be viewed as "employed by or accounted with" the Bureau. This argument simply disputes the complaint's factual allegations.

■ Norton argues that "association with" an enterprise is not established where a defendant is merely regulated by the enterprise. Norton distinguishes the *Bright* and *Yonan* cases, *supra*, as cases where defendants "had an enterprise going" with a corrupted official. However, no valid distinction can be made between this case, where defendants allegedly had continued contact with the Bureau in order to obtain inspection certificates, and the *Yonan* case, *supra*, where defendant regularly dealt with the enterprise to expedite cases. The City has sufficiently alleged that by scheming with and bribing Bureau employees, and repeatedly mailing false permit applications to the Bureau over almost a decade, the contractors associated with the Bureau. *See Yonan, supra*, at 167; *Schacht, supra*, at 1360 and cases cited therein.

### G. Participation in or Conduct of the Enterprise's Affairs

Norton and Pace argue that the complaint's allegations do not establish that they participated in the enterprise. Pace contends that the complaint is defective for failure to allege that defendants "exercised any influence or control" over the affairs

of the Bureau and that in any event the City has not shown a relationship between the business of the enterprise and Pace's conduct with respect to that business. Norton argues that making payments to persuade sewer inspectors not to inspect "is precisely the opposite" of participation in the Bureau's affairs.

This court is bound by *Scotto, supra*, at 54, which held that

[O]ne conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise.

*Scotto* rejected arguments that "conduct" is only established if the predicate acts further the affairs of the enterprise or relate to its operation or management. *Id.*

■ The City's complaint alleges that defendants engaged in schemes to commit mail fraud and bribery in order to obtain inspection certificates from the Bureau while evading its regulatory supervision. Because inspection and issuance of inspection certificates were plainly part of the Bureau's regular activities, the complaint alleges a relationship between the predicate offenses and the Bureau's affairs sufficient to establish defendants' participation in the enterprise.

### H. Pattern of Racketeering Activity

■ Pace, Mario Durso, Division and Norton contend that the City has not properly alleged a pattern of racketeering activity. All argue that at most, the City has alleged the existence of a single scheme furthered by multiple acts. Even if that characterization of the complaint is accurate, the Second Circuit Court of Appeals has rejected defendants' interpretation of RICO. *United States v. Ianniello*, 808 F.2d 184, 191–93 (2d Cir.1986). *Ianniello* holds that the use of the word "pattern" in the statute does not require the establishment of multiple schemes. Because the

City has set forth at least two acts committed within the requisite time period by each defendant connected by a common purpose of participation in a continuing enterprise's affairs, it has sufficiently alleged a pattern. *See United States v. Teitler,* 802 F.2d 606, 611–12 (2d Cir.1986).

■ Mario Durso also contends that a pattern is not established because the sewer inspectors have been dismissed and there is therefore no continuity or threat of continuity of predicate acts. As the City points out, the threat of continuity is to be evaluated during the existence of the criminal activity, not after its discovery.

*I. Predicate Acts*

*1. Particularity of the Pleadings*

Norton, Pace and Division all contend that the predicate acts are not pled with sufficient particularity. Norton and Pace argue that the mail fraud acts are not set forth with enough specificity to meet the requirements of Federal Rule of Civil Procedure 9(b). Division's attack is much broader. Division asserts that the predicate acts are not set forth with enough specificity to show there is probable cause to believe that each defendant committed them. Division says the mail fraud allegations fail because they do not state the time, contents and place of the false representations and specify how they were false or the factual basis for believing there was intent to defraud. Division also complains that the complaint does not give each defendant notice of the specific roles each played in the charged conduct and does not specify the date of each bribe, the amount, the defendant offering it, or the sewer inspector accepting the bribe. Division further contends that the conspiracy count is not alleged with sufficient particularity.

■ Federal Rule of Civil Procedure 9(b) does not in terms require specification of the time, place, and contents of alleged fraud. The Second Circuit has repeatedly endeavored to reconcile Rule 9(b)'s particularity requirement with the principle that evidence need not be pleaded. *Credit & Finance Corp. Ltd. v. Warner & Swasey Company,* 638 F.2d 563, 566 (2d Cir.1981).

It is sufficient under Rule 9(b) if plaintiffs provide an adequate basis for their allegations and give defendants enough information to put them on notice of the nature of the claim. *Id.* at 566–67. Rule 9(b)'s requirements may be relaxed as to matters particularly within the opposing party's knowledge. *Schlick v. Penn-Dixie Cement Corporation,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Rich-Taubman Associates v. Stamford Restaurant Operating Company,* 587 F.Supp. 875, 880 (S.D.N.Y.1984).

■ This case is analogous to *Beth Israel Medical Center v. Smith,* 576 F.Supp. 1061 (S.D.N.Y.1983), which held that where the complaint specified the nature and operation of a bribery and mail fraud scheme and exact dates and amounts of many alleged payments, the complaint was not deficient for failure to specify the dates or contents of specific mailings or telephone calls. The court's reasoning is especially applicable to the City's complaint. As can be readily inferred from the alleged *modus operandi* of the schemes, there were numerous mailings of standardized documents containing identical false representations that sewer regulations would be obeyed and that proper sewer work and inspections had been performed. To burden the complaint with specific allegations of hundreds of such instances would serve little purpose, *Nagler v. Admiral Corporation,* 248 F.2d 319, 326 (2d Cir.1957), particularly since defendants seem to be in the best position to provide the details they demand.

The complaint gives defendants enough notice of their roles in the alleged misconduct. The contractors and their employees are alleged to have been members of conspiracies with various sewer inspectors. *See Rich-Taubman, supra,* at 879 & n. 5. It is hardly unfair to infer fraudulent intent from the facts alleged that each contractor and its employees regularly paid bribes and regularly caused false documents to be mailed in order to evade the sewer regulations. In any event, Rule 9(b) expressly

provides that intent may be averred generally.

For the reasons stated in *Haroco, Inc. v. American National Bank and Trust Company of Chicago,* 747 F.2d 384, 403–05 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), this court declines to follow the two cited decisions by district courts in this circuit which have held that predicate acts must be pleaded with enough particularity to establish probable cause they have been committed.

Although Division also cites cases which purportedly apply Rule 9(b)'s particularity requirements to RICO bribery pleadings, those decisions actually deal with allegations of fraud. In any event, the City has set forth enough specific instances of bribery by each contractor and details of the nature and operation of the bribery schemes to provide a factual basis for its claims. *See Beth Israel, supra,* at 1071. Similarly, the City's allegations that each contractor and its employees schemed with sewer inspectors to commit systematic bribery and mail fraud readily support an inference that they agreed to enter into a conspiracy to commit two or more predicate acts. *Rich-Taubman, supra,* at 879 & n. 5.

### 2. Bribery

Pace, Harris, Mirabile, Mario Durso, Division and Norton all contend that they did not commit the racketeering act of bribery because, under N.Y. Penal Law § 200.05 (McKinney 1975)

> [i]n any prosecution for bribery, it is a defense that the defendant conferred or agreed to confer the benefit involved upon the public servant involved as a result of conduct of the latter constituting ... coercion, or an attempt to commit coercion.

They point to the complaint's allegations that the named sewer inspectors pled guilty in 1984 to violating the Hobbs Act, 18 U.S.C. § 1951 (1982), in connection with receipt of contractor payments and say that these convictions establish that the contractors were "coerced" within the meaning of N.Y. Penal Law § 200.05 (McKinney 1975).

The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2) (1982). No doubt the use of "actual or threatened force, violence or fear" would be enough to show "coercion" under the New York Penal Law. But to obtain money under "color of official right" need not imply "coercion" under New York law.

In this circuit, extortion "under color of official right" is established by a public official's wrongful use of office. *United States v. Margiotta,* 688 F.2d 108, 130 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). Wrongful use of public office can be shown with evidence of "a request, demand or solicitation, no matter how subtle" or of a *"quid pro quo." United States v. O'Grady,* 742 F.2d 682, 691 (2d Cir.1984). To be sure the opinion in *Margiotta, supra,* at 130, says that the wrongful use of office supplies the element of "coercion," but the *O'Grady* opinion makes it clear that mere use of public office to "induce" payments not due is sufficient to establish a Hobbs Act violation. *O'Grady, supra,* at 688–89.

Defendants simply assume that "extortion" under the Hobbs Act means the same thing as "coercion" under N.Y. Penal Law § 200.05 (McKinney 1975). Defendants have cited no authority for the proposition that the New York Penal Law relieves all bribers who enter into a *quid pro quo* arrangement from liability where the public position of the receiver of the bribe was the "inducement" for payment of the bribe. Indeed, to construe section 200.05 of the New York Penal Law to have that effect would make conviction for bribery virtually unattainable where the parties voluntarily agree on the corrupt transaction.

The case of *United States v. Bertman,* 686 F.2d 772, 775 (9th Cir.1982) dealt with a similar coercion defense under Hawaii law. The court approved a jury instruction defining coercion as "'either actual, direct or

positive, where physical force is put upon a man ... or implied where the relation of the parties is such that one is under subject[ion] to another ... and is thereby constrained to do what his free will would refuse.'" *Id.* Because defendant in that case was free to reject bribe solicitations and report them, but chose bribery to benefit his economic interests, the court found he failed to show the requisite "constraint ... on his free will." *Id.*

In the present case, the complaint's allegations indicate that defendants were similarly free to report the corrupt sewer inspectors, but preferred to enter into a *quid pro quo* arrangement to further their own interests. On these allegations, the court declines to say that the complaint should be read to mean that defendant contractors and their employees were "coerced."

■ In any event, the City was not a party to the federal prosecutions which led to the guilty pleas and is not bound by the judgments of conviction. Moreover, apparently the sewer inspectors pled guilty to Hobbs Act violations stemming from payments by a contractor not named in this complaint. Their pleas, therefore, do not establish that the bribes that are the subject of this complaint were the product of "coercion." In addition, New York law holds that it is a question of fact whether a coercion defense is established. *People v. McGee,* 49 N.Y.2d 48, 399 N.E.2d 1177, 1183, 424 N.Y.S.2d 157, 164 (1979), *cert. denied,* 446 U.S. 942, 100 S.Ct. 2167, 64 L.Ed.2d 797 (1980). That sewer inspectors pled guilty to Hobbs Act offenses arising out of different transactions than those set forth in the complaint gives this court no basis for dismissing the complaint.

### 3. Mail Fraud

Harris and Mirabile argue that as victims of extortion, they are not aligned with any of the sewer inspectors' wrongful acts and therefore are not liable for mail fraud. They point out that mail fraud requires a scheme or artifice to defraud. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). Defendants acknowledge that a scheme to defraud the citizenry and government of intangible rights is cognizable when a schemer owes a fiduciary duty to the defrauded person, *Margiotta, supra,* at 121, and concede that a non-fiduciary who so schemes with a fiduciary can be prosecuted under the mail fraud statute. For reasons already discussed, the court has no basis for saying that defendants were victims of extortion and thus did not enter into schemes to defraud the City. The complaint alleges the existence of such schemes, and this supports the claim that the contractors committed mail fraud.

Norton argues that the complaint fails to link it with any act of mail fraud. Because the complaint alleges that each contractor schemed with sewer inspectors to cause repeated false mailings to the Bureau, this contention lacks merit.

### J. RICO Conspiracy

■ Division and Pace contend the complaint does not adequately inform them of what they did to join the conspiracy or allege an agreement to participate in the affairs of the enterprise through the commission of two or more predicate acts. In fact, the complaint does allege that for several years, each contractor agreed with corrupt sewer inspectors to commit multiple acts of mail fraud and bribery in order to evade sewer regulations. It can readily be inferred from these facts that each contractor defendant thereby entered into a conspiracy to participate in the affairs of the Bureau through a pattern of racketeering. *Rich-Taubman, supra,* at 879 & n. 5.

Division also argues that because the only predicate acts set forth with specificity are bribes to O'Mara at a time when he was cooperating with City authorities, the City has not sufficiently alleged a bilateral conspiracy. This argument assumes facts not set forth in the complaint. In any event, the complaint alleges that Division bribed several inspectors and schemed with them to commit multiple acts of mail fraud over a period of almost ten years. For at least the period preceding the City's undercover investigation, therefore, the com-

plaint sufficiently alleges the existence of a conspiracy with O'Mara, and a conspiracy with other sewer inspectors is adequately alleged for the whole period. Moreover, by setting forth the nature and operation of the bribery and mail fraud schemes, the City has provided more than bare allegations to support its RICO conspiracy claim.

### III. CLAIMS FOR BREACH OF FIDUCIARY DUTY

The City's third cause of action against the contractors and their employees is for inducement of breach of fiduciary duty. The seventh cause of action against the sewer inspectors is for breach of fiduciary duty.

■ Pace contends that the relationship between an inspector and his employer is not fiduciary. On the contrary, New York law establishes that an employee-employer relationship is fiduciary. *Western Electric Co. v. Brenner*, 41 N.Y.2d 291, 360 N.E.2d 1091, 392 N.Y.S.2d 409, 411 (1977). The defendant inspectors also owed a fiduciary duty as public officials. *See Margiotta*, *supra*, at 121–22.

Pace, Norton, Mario Durso, Harris and, apparently, Mirabile argue that in light of the fact that the inspectors pleaded guilty to extortion, they and not the contractors are responsible for their breaches of fiduciary duty. As already discussed, the complaint does not allege and the court has no basis for saying that the contractors were mere victims of extortion. These arguments are therefore rejected.

### IV. CLAIMS FOR CIVIL CONSPIRACY AND COMMON LAW FRAUD

The City's fourth claim against the contractors and eighth claim against the inspectors are for civil conspiracy and common law fraud. Pace, Norton, Harris, Mario Durso and Division claim that New York does not recognize a tort of civil conspiracy. Pace, Norton, and Division contend that the underlying tort of common law fraud is not pleaded with adequate specificity under Federal Rule of Civil Procedure 9(b). Harris and Mario Durso argue that

as victims of extortion they cannot be co-schemers in any fraud or conspiracy.

■ As the City points out, its conspiracy claim properly serves to fasten liability on contractors who did not directly commit fraud. The underlying tort of fraud is sufficiently pled by the complaint's allegations that the contractors repeatedly misrepresented in sewer permit applications that they would obey sewer regulations and that the contractors repeatedly misrepresented in inspection certificates that sewer tie-in work had been properly inspected and performed. For the same reasons mail fraud is pled with adequate particularity the City's claim of common law fraud satisfies Rule 9(b). Finally, for reasons already discussed, the court cannot say on these motions to dismiss that contractors were mere victims of extortion.

### V. NEED FOR STAY UNDER DOCTRINES OF PRIMARY JURISDICTION AND EXHAUSTION

Harris, Mario Durso, Mirabile and Norton all argue that this action should be dismissed or stayed until the City has obtained a determination from its Environmental Control Board that its sewer regulations have been violated and it has suffered an resulting injury. Defendants rely on the doctrines of primary jurisdiction and exhaustion of administrative remedies.

■ For reasons already discussed, the City need not exhaust administrative remedies before suing on its RICO claims. Similarly, the City need not exhaust administrative remedies to bring its pendent common law claims. Defendants argue as though the City's suit were brought for the purpose of enforcing its sewer regulations, ignoring the fact that the complaint seeks to obtain compensation for the City's injuries. As the City observes, the Board has no power to adjudicate the City's claims or provide appropriate relief. *See Whitaker v. Board of Higher Education of the City of New York*, 461 F.Supp. 99, 107–09 (E.D.N.Y.1978).

■ The doctrine of primary jurisdiction applies where the courts and an

administrative agency have concurrent jurisdiction over a dispute which involves issues beyond the conventional experience of judges. *Engelhardt v. Consolidated Rail Corp.*, 756 F.2d 1368, 1369 (2d Cir.1985). The doctrine does not apply where the issue is not the reasonableness of a rule, but a violation of the rule. *C.A.B. v. Aeromatic Travel Corp.*, 489 F.2d 251, 253 (2d Cir.1973). In this case, the question of whether the City's sewer regulations were violated is certainly a matter the court is competent to decide. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–06, 96 S.Ct. 1978, 1986–88, 48 L.Ed.2d 643 (1976).

■ In any event, it is plain that the doctrine of primary jurisdiction does not apply where the agency itself is the plaintiff. *Interstate Commerce Commission v. Maine Central Railroad Company*, 505 F.2d 590, 594 (2d Cir.1974); *Aeromatic, supra*, at 254. It follows that where, as here, the governmental body encompassing the agency brings suit, the doctrine is inapplicable. Finally, the primary jurisdiction doctrine does not require resort to an agency where, as here, that agency has no jurisdiction over the relief sought and cannot provide an adequate remedy. *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 455–56, 65 S.Ct. 716, 725, 89 L.Ed. 1051 (1945); *Whitaker, supra*, at 107–09.

## VI. IMPROPER JOINDER OF CAUSES OF ACTION

Division moves for dismissal of causes of action one through four for improper joinder of separate causes of action in a single count, or alternatively for an order requiring separate statement of claims and severance of the claims against Division. Division argues that the complaint violates Federal Rule of Civil Procedure 10(b), which requires that "[e]ach claim founded upon a separate transaction or occurrence ... shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth."

■ The City alleges that each contractor was involved in schemes with the sewer inspectors involving precisely the same procedure and types of conduct. The City has separately pled the specific evidence of bribery and claims for relief against each contractor. To require the City to also set forth each cause of action against each contractor separately would merely elongate the complaint in violation of Federal Rule of Civil Procedure 8(a)(2) without facilitating the "clear presentation" Rule 10(b) requires.

■ Mario Durso moves pursuant to Federal Rule of Civil Procedure 20(a) and (b) for severance of the complaint as against it. Division also seeks severance. Both argue that because the complaint alleges that each defendant contractor schemed separately with the sewer inspectors, the complaint does not set forth a "right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences" as Rule 20(a) requires. They further contend they will be prejudiced if they are forced to shoulder the costs of discovery for other defendants to whom they bear no relation.

There is no rigid rule as to what constitutes the same transaction or occurrence for purposes of joinder under Rule 20(a), and the Rule's requirements are to be liberally interpreted. *Vulcan Society of Westchester County v. Fire Department of the City of White Plains*, 82 F.R.D. 379, 387 (S.D.N.Y.1979); *Hall v. E.I. Du Pont De Nemours & Co., Inc.*, 345 F.Supp. 353, 381 (E.D.N.Y.1972). The alleged fraud on the City and its citizens, the corruption of the sewer inspectors and the injury to the City's sewer system can reasonably be viewed as "ultimate factual occurrences" rendering it fair to require the contractors to defend against the City's action jointly. *Hall, supra*. In any event, by alleging systematic corruption of its Bureau of Sewers and the sewer inspectors, the City has adequately alleged that the acts the contractors allegedly committed were part of a series of occurrences of similar types and with similar purposes. When the common factor of the sewer inspectors' alleged involvement in these occurrences is con-

sidered, Rule 20(a) is satisfied. *See Vulcan, supra.*

Although Division and Mario Durso contend that they will be prejudiced by sharing the costs of discovery with other defendants, the court believes that joint discovery is likely to reduce overall costs. As Mario Durso points out, even if severance were granted the City would have to undertake the same discovery steps against each defendant. In any event, joint discovery will clearly further court efficiency. *Nagler v. Admiral Corporation,* 248 F.2d 319, 328 (2d Cir.1957).

Defendants' motions are denied. So ordered.