**FARBERWARE, INC., Plaintiff,**

v.

**William GROBEN, Barbara Groben, David Groben, Daniel Groben, Paul Morano's Communication Systems, Paul Morano, SCI Corp., Louis Misenti, American Mechanical Corporation, David Norkin, International Machinery Corp., Fred Parsons, Starr Construction Services, Inc., Wenco Machinery Corp., William Shouten, Cousins Metal Industries, Globe Fence Co., Inc., Bruckner Associates, Marvin E. (a/k/a George) Louramore and John Does 1–10, Defendants.**

**No. 89 Civ. 6240 (PKL).**

United States District Court, S.D. New York.

May 16, 1991.

Schulte Roth & Zabel, New York City (Martin L. Perschetz, Marcy Ressler Harris, Howard O. Godnick, Joseph A. Mendola), for plaintiff.

Tenzer, Greenblatt, Fallon & Kaplan, New York City (Lawrence S. Feld, Eric Cherches, of counsel), for Cousins Metal Industries, Inc.

Law Offices of Richard A. Rehbock, New York City (Richard A. Rehbock, Charles G. McQuair, of counsel), for David Norkin, American Mechanical Corp., Starr Const. Services Inc. and Bruckner Associates.

Michael J. Siris, New York City, for Daniel Groben.

Dennis W. Blake, Midland Park, N.J., for Wenco Machinery Corp. and William Shouten.

## OPINION AND ORDER

LEISURE, District Judge.

This case involves allegations of violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and of the Wire and Electronic Communications Interception and Interception of Oral Communications Law, 18 U.S.C. § 2510 *et seq.* (the "Wiretapping Statute"), as well as common law fraud.

Defendants David Norkin, American Mechanical Corporation, Starr Construction Services, Inc., Bruckner Associates (collectively, the "Norkin Defendants"), Cousins Metal Industries Inc. ("Cousins"), Wenco

Machinery Corp. ("Wenco") and William Shouten ("Shouten") now move for dismissal of Counts II, III and IV of the amended complaint (the "Amended Complaint") as against each of them.[1] Defendant Daniel Groben moves for summary judgment dismissal of Count I as against him.

## BACKGROUND

Plaintiff in this case, Farberware, Inc. ("Farberware"), is a Delaware corporation with its principal place of business in the Bronx, New York. Farberware manufactures kitchenware items, such as pots and pans. Farberware commenced this action on September 21, 1989, alleging a number of fraudulent schemes perpetrated by certain of its employees acting in concert with some of its product and service vendors. Farberware's Amended Complaint, against which the instant motions have been made, was filed February 13, 1990.

The central figure in these allegations, who is named as a participant or instigator in every wrongful act contained in the Amended Complaint, is defendant William Groben ("Groben"), Farberware's Vice President for Operations at the time of the alleged fraudulent schemes. In Counts II, III, and IV, Farberware alleges several types of schemes, including the payment of kickbacks to Groben in exchange for his arrangement of contracts between the vendor in question and Farberware, contracts that allegedly involved either inflated prices or goods and services that were nev-

er received, and the removal of Farberware's property by certain defendants without proper compensation to plaintiff. Count II is brought pursuant to 18 U.S.C. § 1962(c), and alleges predicate acts of mail and wire fraud. Count III is brought pursuant to 18 U.S.C. § 1962(d), and alleges a conspiracy to violate RICO. Count IV alleges pendent common law fraud claims.

In Count I, Farberware alleges that Groben, along with others of the non-moving defendants, installed an illegal wiretap and recording device on the office telephone of Farberware's President. Farberware further alleges that Daniel Groben, Groben's son, assisted in the assembly and mailing of packages of copies of tapes made by the recording device to members of Farberware's management, current and former Farberware employees, employees of affiliated companies, and various competitors and members of the media.

The Norkin Defendants, Cousins, Wenco and Shouten[2] move to dismiss Counts II and III for failure to plead fraud with particularity, as required by Fed.R.Civ.P. 9(b). In addition, these defendants contend that the RICO counts should be dismissed under Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted. The Norkin Defendants also argue for dismissal of the Rico counts on the ground that the RICO "pattern" requirement is unconstitutionally vague. Upon dismissal of the RICO counts, defendants

---

**1.** On February 11, 1991, a default judgment on the issue of liability was entered against defendants William Groben, Barbara Groben, David Groben, Paul Moreno (sued herein as Paul Morano), P.M. Communication Systems (sued herein as Paul Morano's Communications Systems), Fred Parsons, and International Machinery Corporation ("IMC"), pursuant to Fed.R.Civ.P. 55(b)(2). On April 8, 1991, a Stipulation of Settlement and Order of Dismissal Upon Consent was entered against defendants SCI Corp. and Louis Misenti.

Defendants IMC, SCI Corp. and Louis Misenti had previously moved for dismissal of the claims against them. Those motions are now moot and will not be considered, except to the extent that the Norkin Defendants have joined in the argument of parts of IMC's brief. That brief will be referred to in this opinion as "IMC Mem."

Thus, of the defendants still remaining in this action, all except Globe Fence Co., Inc., and Marvin E. (a/k/a George) Louramore have moved to dismiss the claims against them. References to memoranda of law submitted in connection with each party's motion will be to "_____ Mem."

**2.** Defendants Wenco and Shouten joined in the motion by letter well after all briefs were submitted by other parties. The Court has permitted them to join the other defendants' motions on this basis, but only to the extent that no additional briefing was required on the part of Farberware. Further, the Court will consider the sufficiency of the pleadings against Wenco and Shouten only to the extent of issues necessarily considered by the Court on the motions of the other defendants.

seek dismissal of the common law claims for lack of subject matter jurisdiction.

Daniel Groben, invoking Fed.R.Civ.P. 12(c) and 56, asks the Court to sever him from the other Count I defendants, and to dismiss Count I, the only count in which he is named, against him.

## DISCUSSION

*I. Count II: RICO*

The moving defendants challenge the sufficiency of the claims against them under both Fed.R.Civ.P. 9(b) and 12(b)(6). The facts alleged against each defendant will be set forth separately below.

### A. Sufficiency Under Rule 9(b)

■ Federal Rule of Civil Procedure 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

As in a motion to dismiss a claim pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff's allegations must be taken as true, *see Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986), and the Court must limit its consideration to those facts alleged on the face of the pleading. *See Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989); *Raffaele v. Designers Break, Inc.*, 750 F.Supp. 611, 612 (S.D.N.Y. 1990).

The pleading's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant to frame a response. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) is designed to provide the defendant fair notice of the plaintiff's claim so as to enable the defendant to prepare a suitable defense, to protect the defendant's reputation from harm, and to reduce the number of strike suits. *See Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990); *Di Vittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Thus, "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Di Vittorio, supra*, 822 F.2d at 1247; *see also Luce, supra*, 802 F.2d at 54.

Where a RICO claim includes allegations of fraudulent conduct, the Second Circuit has required that the pleading of fraud meet the requirements of Rule 9(b). *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir.1990). The Second Circuit has made a distinction between the pleading of fraud in a RICO conspiracy, and the pleading of the conspiracy itself. "Rule 9(b) applies only to fraud or mistake, not to conspiracy. [The] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal requirements of Rule 8(a)." *Id.* at 26 n. 4; *see also Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 660 F.Supp. 1362, 1372 (D.Conn.1987).

■ In the case before the Court, plaintiff alleges both mail and wire fraud as predicate acts. "In alleging mail fraud, the plaintiff must set forth the contents of the items mailed and specify how each of the items was false and misleading." *Official Publications, Inc. v. Kable News Co.*, 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part and rev'd in part*, 884 F.2d 664 (2d Cir.1989). Wire fraud is a separate act from mail fraud and must, itself, be pled with particularity.

■ Plaintiff has based most of its allegations of mail and wire fraud on information and belief and not on actual knowledge. *See* Complaint ¶ 1. In general, allegations of fraud cannot be based on information and belief. *See Di Vittorio, supra*, 822 F.2d at 1247; *Luce, supra*, 802 F.2d at 54. However, where the matter pled is peculiarly within the knowledge of the defendant, that requirement is relaxed, "in which event the allegations must be accom-

panied by a statement of the facts upon which the belief is based." *Di Vittorio, supra,* 822 F.2d at 1247.

### 1. Cousins Metal

■ Farberware alleges that "[o]n various occasions during the period 1986 to at least January 1989," Amended Complaint ¶ 53(f), Cousins underpaid for scrap metal purchased from Farberware. According to the Amended Complaint, it was Cousins's practice to transport the scrap metal to its own offices, where Cousins weighed the metal and then mailed a check to Farberware based upon an agreed price per pound. Farberware alleges that Groben allowed Cousins to remove scrap metal on the understanding that it would not be accounted for, in exchange for kickbacks, "which Cousins knew were retained by Groben for his personal benefit." *Id.* ¶ 53(f)(i). Farberware further alleges that "[o]n numerous occasions during this period, in furtherance of a scheme to defraud Farberware, Cousins mailed checks to Farberware purportedly in full satisfaction for the scrap metal purchased." *Id.* ¶ 53(f)(ii).

Cousins challenges this pleading for failure to identify specific shipments, purchase orders, checks or wire communications in furtherance of the alleged scheme, for failure to identify individual agents of Cousins as participants, and for failure to identify specifics of any single kickback. The Court agrees that Farberware has not alleged sufficient detail. While the Amended Complaint gives notice of the type of scheme alleged by plaintiff, it provides no insight into the grounds upon which the claim rests. Particularly where, as here, the allegations are based on information and belief, they must be supported by a statement of facts on which plaintiff's belief of fraud is founded. Here, plaintiff has given no indication as to why it believes that scrap metal was removed by Cousins without full reimbursement.

Plaintiff argues that the details of these allegedly fraudulent acts are particularly within the knowledge of the defendants, and that therefore the strict pleading standard of Rule 9(b) should be relaxed. While

plaintiff is undoubtedly correct as to certain details of the alleged scheme, it is clear from the pleadings that the checks at issue were mailed to plaintiff, and that plaintiff presumably should have some information in its possession regarding the receipt of those checks, the dates and amounts of payments made, and, perhaps, some indication of the amount of scrap metal generated by plaintiff and the amount believed missing. Accordingly, Count II of the Amended Complaint against Cousins is dismissed without prejudice, for failure to comply with the pleading requirements of Rule 9(b).

### 2. Norkin Defendants

The allegations against the Norkin Defendants involve inflated charges for materials and services. David Norkin ("Norkin") himself is not charged separately, but is alleged to have taken part, either personally or through agents, in the alleged frauds perpetrated by these companies, in which he was either an officer or a partner. In a joint memorandum, the Norkin Defendants assert that plaintiff has inadequately pled the content and number of allegedly fraudulent invoices sent by them, as well as the dates on which they were sent and the identity of the senders. They contend that the allegations of wire fraud are conclusory and fail to specify the statements made, the time and place of the statements, or the way in which plaintiff was misled.

#### a) Starr Construction

■ The allegations against Starr Construction Services, Inc. ("Starr") include that in or about December, 1987, Groben arranged a scheme with Norkin, and other Starr employees acting at Norkin's direction, whereby Farberware purchased roofing materials from Starr for $433,000, when "Groben and Norkin knew that such materials were worth less than 10% of that amount." Amended Complaint ¶ 53(b). Plaintiff alleges that the scheme was "arranged by use of the mails, wires and in person with Norkin." *Id.*

Plaintiff further alleges that in or about February 1988, "Groben, Starr and Norkin agreed to cause Farberware to pay Starr at least $145,000 for repair of roof leaks and

guard-house improvements, most of which work was never performed," and that in or about October 1988, the same defendants "agreed to cause Farberware to pay Starr $17,230 for permit work worth less than one-third that amount." *Id.* ¶ 53(b)(i), (ii). Plaintiff alleges that "invoices and other correspondence" related to these schemes were mailed to Farberware by Norkin or Starr employees under his direction.

These allegations are considerably more specific than those against Cousins, involving particular transactions and specific monetary amounts. All actions are alleged to have been taken by Norkin or employees under his control. While the dates and exact contents of all of the mailings have not been detailed, plaintiff has alleged that some of them were invoices. The Court concludes that plaintiff has pled sufficient detail to put Starr and Norkin on notice of the mail fraud claims against them.

█ The same cannot be said for plaintiff's allegations of wire fraud, which are wholly conclusory. Accordingly, plaintiff's allegations of wire fraud against Starr and Norkin in Paragraph 53(b) of the Amended Complaint are dismissed without prejudice under Rule 9(b).

### b) Bruckner Associates

█ Plaintiff's allegations against Bruckner Associates ("Bruckner") are that "at least during the period 1986 through 1988, Groben, [defendant Fred] Parsons and Bruckner arranged to have Farberware store merchandise at Bruckner's warehouse when each ... knew that such storage was unnecessary," and "on numerous occasions during this period ... Bruckner mailed invoices to Farberware." The only allegation of fraud in this claim is the conclusory one that the storage was arranged "[i]n furtherance of a scheme to defraud Farberware." This is clearly the sort of non-specific claim of fraud to which Rule 9(b) is addressed, and the Count II claim against Bruckner is therefore dismissed without prejudice.

### c) American Mechanical

█ Plaintiff alleges that American Mechanical Corporation ("AMC"), with Groben and Parsons, was part of a scheme to provide and install a ventilation and air conditioning system for $233,000, allegedly twice the amount the work and materials were worth. Plaintiff further alleges that, in consideration of this arrangement, "AMC and/or Norkin paid kickbacks to Groben," and that "[i]n furtherance of this scheme, at least during the period August 1988 through and including January 1989 ... numerous invoices and other correspondence were mailed between AMC and Farberware, and numerous telephone calls were made." Amended Complaint ¶ 53(i)(ii).

█ The allegations concerning the transaction involved and the amount of overcharge are clearly pled with sufficient detail to give AMC notice of the claim against it. While the allegations of the mailings are not specific as to dates and contents, the Court finds sufficient particularity in the allegation that some of the items mailed were invoices for the work done. As to the wire fraud claims, however, plaintiff alleges merely that numerous calls were made, with no indication of the date, the callers or the subject matter. As discussed, *supra*, such an allegation is overly general, and thus the wire fraud claims against AMC under Paragraph 53(i) of the Amended Complaint are dismissed without prejudice.

█ As to Norkin, this section of the Amended Complaint contains only the allegation that he "and/or" AMC paid kickbacks to Groben. While such actions constitute the type of information that is likely to be particularly within the knowledge of the defendants, this averment, made on information and belief, is insufficient under Rule 9(b). Thus, the claims against Norkin under Paragraph 53(i) are dismissed without prejudice.

### 3. Wenco and Shouten

█ The allegations against Wenco and Shouten include that in or about February 1988, along with Groben or Farberware

employees acting at his direction, "Shouten, or other Wenco employees acting at his direction, and Wenco" entered into a scheme to have Farberware buy a controller for a CNC computer. Allegedly, on or about February 11, 1988, Wenco purchased the controller from Groben "through an actual or fictitious entity owned or controlled by Groben and/or David Groben called Adirondack Machinery Sales ("Adirondack")." Amended Complaint ¶ 53(d). Plaintiff alleges the mailing of an invoice by Adirondack to Wenco on or about February 11, and the mailing of an invoice from Wenco to Farberware on or about February 12, 1988.

Plaintiff also alleges that in November 1988, Shouten or other Wenco employees used the telephone and mails to arrange the purchase by Farberware from Wenco of a digital rollfeed for $50,827, allegedly twice its value. Plaintiff alleges the mailing of a purchase order confirmation by Groben to Shouten on or about November 1, 1988. *Id.* ¶ 53(d)(i).

Plaintiff further alleges that "on numerous occasions in 1987 and 1988" Groben and Shouten arranged for Wenco to purchase goods from Groben through fictitious companies and resell them to Farberware "irrespective of whether Farberware had any need for such items and often at inflated prices." *Id.* ¶ 53(d)(ii). Plaintiff alleges that the goods never left Groben's office. Plaintiff also alleges similar purported purchases by Wenco from non-moving defendant Marvin E. (a/k/a George) Louramore ("Louramore"). Plaintiff alleges use of the mails and telephone in connection with these purchases, and alleges the mailing of invoices by Groben to Wenco on at least eight specific dates between December 2, 1987, and October 12, 1988. Plaintiff also alleges the mailing of purchase orders by Farberware on or about the same dates, as well as the mailing of checks by Wenco to Groben's fictitious companies and to Louramore.

As set forth above, these allegations are pled in considerable detail, which the Court finds to be sufficient under Rule 9(b).

## B. Sufficiency Under Rule 12(b)(6)

The Court will address the sufficiency under Federal Rule of Civil Procedure 12(b)(6) of only those claims that have survived defendants' Rule 9(b) motions.

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980))).

Thus, a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must limit its analysis to the four corners of the complaint,[3] *see Kopec v. Coughlin*, 922 F.2d 152, 154–55 (2d Cir.1991), and must accept the plaintiff's allegations of fact as true, together with such reasonable inferences as may be drawn in his favor. *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Murray v. Milford*, 380 F.2d 468, 470 (2d Cir.1967); *Hill v. Sullivan*, 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("[A]ll allegations in plaintiffs' amended complaint must be accepted as true and

---

**3.** In their Notice of Motion, the Norkin Defendants invoke Fed.R.Civ.P. 56, as well as Rule 12(b)(6). Although the intention of these defendants in so doing is not clearly stated, to the extent that they may intend to request this Court to convert the motion into one for summary judgment, as provided by Rule 12(b), the Court declines to do so.

liberally construed."); *see also Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686. Federal Rule of Civil Procedure 8(a) requires only a " 'short and plain statement of the claim' that will give the defendant fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley, supra,* 355 U.S. at 47, 78 S.Ct. at 103 (quoting Fed.R.Civ.P. 8(a)).

Section 1964(c) of Title 18 of the United States Code provides a civil remedy for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter...." 18 U.S.C. § 1964(c). To state a claim for violation of § 1962(c), under which these claims are brought, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) ... participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *see also Clapp v. Greene,* 743 F.Supp. 273, 277 (S.D.N.Y. 1990) (quoting *Moss, supra,* 719 F.2d at 17); *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 139 n. 5 (N.D.N.Y.1990) (same).

### 1. Sufficiency of the RICO "Pattern" Allegations

To state a claim under the RICO statute, a plaintiff must allege a "pattern" of racketeering activity, which is defined by the statute as two or more acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Determining whether a "pattern" exists within the meaning of the RICO statute is not, however, as simple as mechanically applying the definition provided by the statute. Rather, as the Supreme Court noted in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), "while two acts are necessary, they may not be sufficient." More recently, the Supreme Court further expounded upon the pattern requirement in RICO cases, holding that "RICO's legislative history reveals Congress' intent that to prove a pattern of

racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original); *see also Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.) (en banc), *vacated,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *and adhered to,* 893 F.2d 1433 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). There are thus two distinct, although overlapping, constituents of RICO's pattern requirement.

The Supreme Court in *H.J., Inc.* held that, as to the "relatedness" of the predicate acts, "[c]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc., supra,* 492 U.S. at 240, 109 S.Ct. at 2901; *see also United States v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.) ("An interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions."), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989); *Friedman v. Arizona World Nurseries Limited Partnership,* 730 F.Supp. 521, 547–48 (S.D.N.Y.1990). "[T]he involvement of similar participants is sufficient to demonstrate a relationship among the predicate acts." *United States v. Simmons,* 923 F.2d 934, 951 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991).

In the instant case, the moving defendants have addressed their challenges principally to plaintiff's pleading of continuity. With respect to the "continuity" element of the test for a RICO "pattern," the Supreme Court has held that

"[c]ontinuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects

into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc., supra,* 492 U.S. at 241–42, 109 S.Ct. at 2902; *see also Azurite Corp. v. Amster & Co.,* 730 F.Supp. 571, 581 (S.D.N.Y.1990); *West Mountain Sales, Inc. v. Logan Manufacturing Co.,* 718 F.Supp. 1084, 1087 (N.D.N.Y.1989) (predicate acts occurring over four months do not establish continuity).

■ The Supreme Court has recognized, however, that "[o]ften a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated." *H.J., Inc., supra,* 492 U.S. at 242, 109 S.Ct. at 1902 (emphasis in original). Whether the predicate acts alleged establish a threat of continued racketeering activity depends on the specific facts of each case. Such a threat may be shown, for example, where the related predicate acts themselves involve a clear threat of long-term racketeering activity, or where the predicate acts are part of "conducting or participating in an ongoing and legitimate RICO 'enterprise.' " *H.J., Inc., supra,* 492 U.S. at 243, 109 S.Ct. at 2902.

### a) Starr and Norkin

■ Starr and Norkin argue that Paragraph 53(b) of the Amended Complaint alleges against them "three isolated transactions taking place in December 1987, February 1988 and October 1988 with no allegation threatening future activity." Norkin Mem. at 7. While the Court agrees that plaintiff has not clearly demonstrated a threat of future criminal activity on the part of Starr and Norkin, such an allegation is not necessary where, as here, a plaintiff has pled the existence of a "closed-ended" scheme of repeated conduct over a ten-month period. The issue is, thus, whether the allegations demonstrate sufficient relatedness and continuity within that period.

■ The actions alleged against Starr and Norkin, as set forth in an earlier section of this opinion, are of three incidents in which Starr allegedly overcharged for roofing materials, repairs, and permit work. Given the similarity in type and method of the transactions alleged, and the alleged involvement of the same companies and individuals seeking to defraud the same victim, the Court finds the predicate acts to be related. While there is no precise guideline as to the length of a scheme necessary to establish continuity, the pleading of repeated similar acts over a ten-month period adequately alleges a continuing scheme to defraud plaintiff. Thus, the Court concludes that Farberware has pled a "closed period of repeated conduct" that extends over a more substantial period of time than the "few weeks or months" cited as insufficient by the *H.J., Inc.* Court.

### b) AMC

■ The allegations against AMC involve what is essentially a single transaction, involving the installation of a ventilation and air conditioning system. While RICO liability can be predicated on a single scheme, one allegedly overpriced contract does not involve the type of repeated criminal activity at which RICO is properly directed. *See Continental Realty Corp. v. J.C. Penney Co.,* 729 F.Supp. 1452, 1455 (S.D.N.Y.1990) (Sand, J.). Therefore, Count II of the Amended Complaint is dismissed without prejudice as against AMC.

### c) Wenco and Shouten

■ As described, *supra,* plaintiff alleges numerous incidents of fraudulent sales and purchases by Wenco and Shouten, occurring between December 1987 and November 1988. Plaintiff also alleges the mailing of fraudulent invoices or purchase orders in furtherance of the scheme on at least ten specific dates within this period. For the same reasons explicated in the

above discussion of the claims against Starr, the Court finds that plaintiff has adequately pled a pattern of repeated criminal acts over an eleven-month period involving similar purposes, participants, and methods of commission.

## 2. Sufficiency of the "Conducting the Affairs of the Enterprise" Allegations

 Under section 1962(c) of Title 18, it is unlawful for a person "employed by or associated with" an enterprise affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." The enterprise alleged in the complaint is Farberware itself. Starr and Norkin contend that the complaint does not properly allege that they conducted or participated in the conduct of Farberware's affairs, because "nothing has been alleged beyond a situation where the enterprise company engaged in business contracts with a vendor of goods and services." Norkin Mem. at 10.

> The Second Circuit has held that
> one conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise. Simply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient.
>
> *United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981).

While there is no allegation that Starr and Norkin had any sort of position within Farberware, plaintiff argues that its pleading satisfies the second branch of the *Scotto* test. In a number of earlier cases, RICO liability has been imposed against outsiders that corrupted the workings of a legitimate organization through schemes of fraud and bribery. *See, e.g., United States v. Kaplan,* 886 F.2d 536 (2d Cir.1989), *cert.*

*denied,* —— U.S. ——, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990) (bribery of Parking Violations Bureau officials in return for contracts); *City of New York v. Joseph L. Balkan, Inc.,* 656 F.Supp. 536, 543–45 (E.D. N.Y.1987) (Nickerson, J.) (mail fraud and bribery of city sewer inspectors in return for issuance of fraudulent certificates). As in those cases, defendant here allegedly corrupted, through racketeering activities, the negotiation of contracts entered into as a regular part of plaintiff's business. Thus, the predicate acts "are related to the activities" of the enterprise under *Scotto,* and plaintiff has sufficiently alleged participation in or conduct of Farberware's affairs.

For the same reasons, plaintiff has sufficiently alleged this element against Wenco and Shouten as well.

## II. Count III: RICO Conspiracy

 Cousins, the Norkin Defendants, Wenco and Shouten move for dismissal of Count III for failure to allege a RICO conspiracy under 18 U.S.C. § 1962(d). The Norkin Defendants join in the argument of the brief submitted on behalf of IMC as to this issue.

Section 1962(d) makes it unlawful "to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Paragraph 58 of the Amended Complaint alleges that "[t]he Racketeering Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate, directly or indirectly, in the affairs of Farberware through a pattern of racketeering activity." Count III also incorporates by reference all of the prior allegations of Paragraphs 1 through 56.

Because the Count III claims are dependent upon the Count II allegations, they must be dismissed wherever the Count II claims have been dismissed against a particular defendant. Thus, the RICO conspiracy claims against Cousins, Bruckner and AMC are dismissed without prejudice.

 However, plaintiff's claims against Starr, Norkin, Wenco and Shouten include allegations that these defendants agreed

with Groben to commit the predicate acts charged, in furtherance of schemes to defraud Farberware. *See* Amended Complaint ¶ 53(b), (d). These allegations constitute an adequate pleading of RICO conspiracy. *See Hecht, supra,* 897 F.2d at 25–26; *Rose v. Bartle, supra,* 871 F.2d at 366; *Joseph L. Balkan, supra,* 656 F.Supp. at 547.

### III. *Constitutionality of RICO "Pattern" Requirement*

 The Norkin Defendants join in the argument of the brief submitted on behalf of IMC, which asks the Court to dismiss Counts II and III on the ground that RICO's "pattern" requirement is unconstitutionally vague.

This Court has previously rejected invitations by litigants to declare the RICO pattern requirement void for vagueness, and repeats its earlier statement that "no Court has found RICO so unmanageable either for the Court or the litigants that it must fail a constitutional test." *Kauffmann v. Yoskowitz,* 1990 U.S.Dist. LEXIS 3752 (S.D.N.Y.1990); *see also H.J., Inc., supra,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195; *Beauford, supra,* 865 F.2d 1386. On the contrary, the jurisprudence in this area is steadily developing guidelines for the interpretation of the statute's pattern requirement. *See* Note, RICO's "Pattern" Requirement: Void for Vagueness?, 90 Colum.L.Rev. 489 (1990). Most tellingly, the Second Circuit recently held in a criminal case that the RICO pattern requirement was not unconstitutionally vague as applied. *See United States v. Coiro,* 922 F.2d 1008 (2d Cir.1991). Because this Court cannot find, as urged by defendants, that the courts are "confounded in fruitless attempts to provide clarity and predictability with respect to this element of RICO," IMC Mem. at 21, the Norkin Defendants' motion to dismiss Counts II and III on vagueness grounds is denied.

### IV. *Jurisdiction Over Common Law Claims*

 Defendants have also sought dismissal of plaintiff's state law fraud claims on the basis of lack of subject matter jurisdiction. Dismissal of these claims is appropriate where the federal claims to which they were appended have been dismissed by the Court. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, Count IV of the Amended Complaint is dismissed as against Cousins, Bruckner and AMC. The motions of Starr, Norkin, Wenco and Shouten to dismiss Count IV as against them are denied.

### V. *Wiretapping Claim*

 Daniel Groben moves this Court "under Rules 12(c) and 56 of the Federal Rules of Civil Procedure (i) to sever him from the remaining defendants in Count I ... and (ii) to dismiss Count I thereof as to him." Daniel Groben Mem. at 1.

Daniel Groben's motion to sever under Rule 12(c) is not only procedurally incorrect, but is mooted by the default of the other defendants charged in Count I, and thus requires no further consideration by the Court.

Daniel Groben's motion for summary judgment dismissal of Count I against him is unsupported by anything but his own denial that he had "anything whatever to do with any such enterprise." Affidavit of Daniel Groben, sworn to on June 8, 1990. Because there are clearly disputed issues of fact as to Daniel Groben's participation in the acts alleged in Count I, his motion for summary judgment is denied. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### CONCLUSION

For the reasons set forth above, the motions of Cousins, Bruckner and AMC to dismiss Counts II, III and IV of the Amended Complaint as against them are granted. The wire fraud claims against Starr and Norkin in Paragraph 53(b) of the Amended Complaint are also dismissed, as are the claims against Norkin in Paragraph

53(i). Leave to replead is granted.[4]

The motions of Starr and Norkin to dismiss the claims against them are otherwise denied. The motions of Wenco, Shouten, and Daniel Groben are denied in their entirety.

SO ORDERED.

**4.** The Court notes that it has become an all too common practice for litigants granted leave to replead to make only minor changes in the original pleading based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint that fails to replead with sufficient particularity after a finding of lack of such particularity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) or 12(b)(6) motion after an adequate and thorough repleading may also be viewed as frivolous.