**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Calvin Vernon HIATT,**
**Defendant-Appellant.**

**No. 75–1801.**

United States Court of Appeals, Ninth Circuit.

Nov. 21, 1975.

As Amended on Denial of Rehearing Feb. 26, 1976.

Murray B. Guterson (argued), Seattle, Wash., for defendant-appellant.

Charles Pinnell, Asst. U. S. Atty. (argued), Seattle, Wash., for plaintiff-appellee.

* Honorable Raymond E. Plummer, Senior United States District Judge for the District of Alaska, sitting by designation.

1. The Mann Act, 18 U.S.C. § 2421, states:

"Whoever knowingly transports in interstate or foreign commerce, . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or

"Whoever knowingly procures or obtains any ticket or tickets, or any form of transportation or evidence of the right thereto, to be used by any woman or girl in interstate or foreign commerce, . . . in going to any place for the purpose of prostitution or debauchery. . . .

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

The Travel Act, 18 U.S.C. § 1952, states:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in inter-

## OPINION

Before TRASK and SNEED, Circuit Judges, and PLUMMER,* District Judge.

## PER CURIAM:

Calvin Hiatt appeals from his conviction on one count of conspiracy to violate the laws of the United States, 18 U.S.C. § 371, particularly the Mann Act, 18 U.S.C. § 2421, and the Travel Act, 18 U.S.C. § 1952.[1] We affirm.

In early 1973, Daniel J. Seydel was the owner of a place of business in Seattle, Washington, which the appellant describes as a massage parlor and the government calls a body painting studio. It was named the Soft Touch Studio.[2]

Appellant acknowledges that it was in fact a house of prostitution and that Hiatt had an active role in its management. Seydel also recruited women in Seattle to work as prostitutes in the Anchorage studio and paid their transportation costs. What is not admitted is that Hiatt had any part in the recruiting or transportation. However, the government's evidence is that Hiatt first managed the Seattle studio and then went to

state or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States. . . . ."

2. Mr. Seydel was originally a co-defendant but was killed prior to trial.

Alaska to assist in the management of the studio there. As manager, he reported regularly to Seydel in Seattle by telephone, maintained records of the women's earnings, disciplined them, and even monitored sessions through one-way mirrors which were installed in some rooms, in order to permit management to verify the earnings of the women. Four of the women who had worked in the Alaska studio testified on behalf of the government. One of them related that when she flew from Seattle, where she had worked in the studio there, to Anchorage, she was met by appellant. Other testimony, if believed, was ample to cement Hiatt into the two ventures and to substantiate his participation in the interstate transportation. Apparently it was believed.

Appellant also relies upon the claimed error of the conspiracy instruction and attacks the constitutionality of the Alaska prostitution statute arguing that if this statute was invalid Hiatt could not have been found guilty of transporting women in interstate commerce for purposes of prostitution.

■ There clearly was evidence from which the jury could have found that there was a conspiracy in which Hiatt participated as a conspirator. He was Seydel's manager in Seattle and went to Alaska to help manage the Anchorage studio. He reported from Anchorage to Seydel in Seattle by telephone. There was much testimony as to his knowledge and management of the prostitution activities.

■ Nor were the instructions of the court on the charge of conspiracy inadequate, confusing, or erroneous. We have examined the instructions carefully and find no error in them. Appellant's reliance upon *Twitchell v. United States,* 313 F.2d 425 (9th Cir. 1963), *vacated in part on other grounds sub nom., Rogers v. United States,* 376 U.S. 188, 84 S.Ct. 637, 11 L.Ed.2d 603 (1964), is not in point. Twitchell, a county sheriff, in re-

turn for payments, tolerated a violation of the laws against prostitution in his county. He did not operate the business or have anything to do with interstate transportation of women for unlawful purposes. We accordingly held that he could not be liable under the Mann Act. In this case, on the contrary, there was testimony from the women that Hiatt managed the Seattle operation for a time; that one of the Seattle women flew to Anchorage, was met by appellant, and was instructed in the Alaska operations as to prices and studio regulations; and that Hiatt was in telephone communication with Seydel and the Seattle studio and transmitted money there. Hiatt, in short, could well have been found to have been a major key in the transportation of women from Seattle to Anchorage with the intent and purpose of having them engage in prostitution.

The third argument advanced by appellant is that to be found guilty of a violation of the Travel Act, there must be a finding that the underlying activity was in violation of state law. *United States v. Brown,* 505 F.2d 261 (4th Cir. 1974); *Twitchell v. United States, supra.* Appellant then points out that a state case in the district court in Anchorage, *State v. Fields,* No. 72–4788Cr (unreported 1973), held that the Alaska prostitution statute, Alaska Stat. 11.40.210–230, was unconstitutional because it was discriminatory against females. That decision was later reversed by a Superior Court which held that the statute was not unconstitutional on its face and remanded the case to the municipal court on the question of constitutionality as enforced. We have not been furnished with a copy of that court's opinion on remand. There is in the record a copy of an opinion and order of the District Court of Anchorage, Municipal Division, *City of Anchorage v. Carnt,* No. 74–200, which makes an oblique reference to the rehearing in *Fields* stating that it "reinforced the decision"

as originally made.[3] The present significance of these municipal court orders is uncertain. In addition, we note that Alaska has a bawdyhouse statute which appears on its face to be nondiscriminatory[4] which would also make Hiatt's conduct a violation of state law.

 It is correct that the existence of a state law violation is an element of the violation of the Travel Act and that the court must make a determination of whether the underlying state law has been or could have been violated. *United States v. Kahn,* 472 F.2d 272, 277 (2d Cir.), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973); *see United States v. Nardello,* 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969). Likewise, an asserted defense to the violation of state law must be ruled on. *United States v. Kahn, supra* at 277; *United States v. D'Amato,* 436 F.2d 52, 53 (3d Cir. 1970). The constitutional infirmity asserted against the Alaska statute was that it denied equal protection of law to females, as enforced. This defense in the absence of a determination that the Alaska statute was void in its entirety, would not be available to males prosecuted for prostitution. Under these circumstances, it is doubtful that Hiatt can utilize this infirmity to defeat prosecution pursuant to the statutes under which he was here convicted.

 In any event, the two unpublished opinions on which Hiatt relies are too sketchy and unauthoritative to permit us to hold them controlling. On the record before us we find that the judgment of the district court is correct and it is affirmed.

---

3. The opinion also states:

"There seems to be a colorable argument in support of discriminatory enforcement prior to April 10, 1973. Eleven months elapsed between that date and the date of Defendant's arrest. Reliance on *State v. Fields,* not binding on this Court and involving two differently worded statements of law, is unfounded. This Court will not blindly apply the *Fields* reasoning, which makes only fleeting reference to City of Anchorage procedures, to this case."

The overt acts in *Hiatt* were alleged to have taken place "on or about" mid-November 1973.

4. "Sec. 11.40.260. A person who keeps or sets up a house of ill fame, brothel, or bawdyhouse for the purpose of prostitution, fornication, or lewdness, upon conviction, is punishable by imprisonment in a jail for not less than three months nor more than one year, or by a fine of not less than $100 nor more than $500."