**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Phillip BERTMAN, Defendant-Appellant.**

**No. 81–1006.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 1981.

Decided Sept. 7, 1982.

Peter C. Wolff, Jr., Hart & Wolff, Honolulu, Hawaii, for defendant-appellant.

Mervyn Hamburg, Washington, D. C., argued, for plaintiff-appellee; Daniel Bent, U. S. Atty., Honolulu, Hawaii, Gary Hall, Asst. U. S. Atty., San Francisco, Cal., on brief.

Before POOLE and REINHARDT, Circuit Judges, and BURNS *, District Judge.

POOLE, Circuit Judge:

Defendant-appellant Phillip Bertman appeals from his conviction on one count of violating the Travel Act, 18 U.S.C. § 1952, by travelling in interstate commerce with the intent to promote a bribery scheme in violation of Hawaii law. We affirm.

FACTS

In an effort to secure the approval of the Liquor Commission of Honolulu for his plan to import Coors beer into Hawaii, Bertman contacted Eugene Carson, Liquor Control Administrator for the City and County of Honolulu. Carson's responsibilities included processing, investigating and calendaring applications to the Liquor Commission for licenses to distribute beer.

As a result of their initial telephone conversation of September 6, 1977, Carson believed that Bertman intended to offer him a bribe to use his influence to assure approval of Bertman's application. Carson notified the Honolulu Police Department (HPD) of his suspicions. According to Carson, Bertman in fact offered him a bribe when they met for lunch on September 7, 1977. From this point on, Carson cooperated with the HPD and federal law enforcement officials and pretended to go along with Bertman's bribe attempt. During many of his subsequent meetings with Bertman, Carson was equipped with a radio transmitter and his conversations with Bertman were recorded on tape.

It was undisputed that from September 7, 1977, to June 1, 1978, Bertman gave Carson $700 to pay his green fees for a golf tournament, a $300 sports coat, and a quantity of goods such as pineapple and beer. Bertman also promised to pay Carson $500,-000 over a period of two years, the money to be "laundered" through a bank account in the Bahamas. In December, 1977, Bertman, Carson and an undercover agent with the Federal Bureau of Investigation (FBI) travelled from Hawaii to Florida, and then to the Bahamas where Bertman and the agent set up the bank account through which the bribe money was to be laundered. The last transaction between Bertman and Carson occurred on June 1, 1978, when Bertman delivered stock certificates allegedly worth $25,000. At this point, it was revealed that Carson had been cooperating with law enforcement officials.

Bertman was indicted on December 13, 1978, on one count of violating the Travel Act, and went to trial a year later. At trial, Bertman testified that he originally contacted Carson on the advice of a member of the Liquor Commission who told him that Carson was the only person who could help him obtain approval of his plan to import Coors beer. According to Bertman, when he explained his plan to Carson during lunch on September 7, 1977, Carson immediately asked what was in it for him. Bertman considered this an attempt to "shake him down." Bertman also testified that Carson mentioned during this lunch that he needed $700 to pay his green fees for an upcoming golf tournament, and that he considered this a further attempt at extortion.

According to Bertman, every subsequent transaction between Carson and himself, including the trip to the Bahamas, was the result of persistent coercive pressure by Carson. He testified that Carson initiated every transaction, and that he simply played along in order to keep alive his chances of obtaining approval of his plan to import Coors beer. He also testified that he could not report Carson's activity to the police because of an incident in 1973 in which the HPD and the FBI planted a bugging device in his luggage while he was visiting Honolulu. Bertman lost a subsequent civil action against the City and County of Honolulu for violation of his civil

---

* The Honorable James M. Burns, Chief United States District Judge for the District of Oregon, sitting by designation.

rights. Bertman stated that, in light of this incident, it would make no sense to report Carson's bribe attempt.

Based on this testimony, Bertman requested, over the government's objection, the following jury instruction on the defense of coercion provided in the Hawaii bribery statute.

> In a prosecution for bribery of a public official, it is a defense that the accused conferred or agreed to confer pecuniary benefit as a result of extortion or coercion, and it is the government's burden to prove beyond a reasonable doubt that the defendant did not engage in the prohibited activity as a result of coercion or extortion.

Although the district court refused to give this instruction, it did instruct the jury that it was a defense to bribery that the defendant acted as a result of coercion.

On appeal, Bertman contends that the district court erred in failing to include in its instruction on coercion that it was the government's burden to prove beyond a reasonable doubt that he did not act as a result of coercion. He argues that without such an instruction, the jury could reasonably have inferred that the burden was on him to prove coercion, a burden he does not bear under Hawaii law.[1]

While we agree that the instruction erroneously shifted the burden of proof on coercion from the government to Bertman, we conclude that the error was harmless and thus affirm.

1. Although Bertman's proposed instruction requested that the jury be instructed both as to coercion and extortion, the instruction given by the court covered only coercion. Moreover, while the court gave an instruction defining coercion, no instruction was requested or given defining extortion. On appeal, Bertman does not assign as error the court's failure to instruct the jury on the defense of extortion. Accordingly, that issue is not before us.

2. Although the issue is not before us, we seriously doubt that non-substantive state law defenses, such as the running of the statute of limitations, are cognizable in a Travel Act prosecution. See United States v. Cerone, 452 F.2d

## DISCUSSION

■ The Travel Act makes it a federal offense to travel in interstate commerce with the intent to promote or facilitate the promotion of any unlawful activity, including "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States." 18 U.S.C. § 1952(a)(3) and (b)(2). When the unlawful activity charged in the indictment is the violation of state law, the commission of or the intent to commit such a violation is an element of the federal offense. See United States v. Hiatt, 527 F.2d 1048, 1051 (9th Cir. 1975); United States v. Goldfarb, 643 F.2d 422, 426 (6th Cir. 1981); United States v. Kahn, 472 F.2d 272, 277 (2nd Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973); United States v. D'Amato, 436 F.2d 52, 54–55 (3rd Cir. 1970). The government thus must prove as part of the Travel Act charge that the defendant has or could have violated the underlying state law, and the defendant may assert any relevant substantive state law defense. See United States v. Hiatt, 527 F.2d at 1051; United States v. Kahn, 472 F.2d at 277; United States v. D'Amato, 436 F.2d at 53.[2]

■ In this case, the unlawful activity charged in the indictment was bribery of a public official in violation of § 710–1040(1) of the Hawaii Penal Code.[3] Section 710–1040(2) specifically provides that coercion is a defense to a prosecution under this section, and Bertman could thus assert it as a defense to the Travel Act charge. Moreover, under Hawaii law, this defense is a non-affirmative one. See H.R.S. § 701–

274 (7th Cir. 1971), cert. denied, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972).

3. The original indictment erroneously identified the bribery statute as H.R.S. § 710–1031(a) which prohibits the intimidation of a correctional officer. On the first day of trial, the court struck the reference to § 710–1031(a) from the indictment. At the close of the government's case, Bertman's counsel moved for a directed verdict of acquittal on the ground that the government had not proved that Bertman had violated § 710–1031(a). The motion was denied. On appeal, Bertman does not challenge that decision, nor the propriety of the court's action in amending the indictment.

115(3); commentary to H.R.S. § 710–1040. Thus, the defendant need only present some credible evidence of coercion, which when considered in light of any contrary government evidence, raises a reasonable doubt as to his guilt. Once he has done so, the burden shifts to the government to prove beyond a reasonable doubt facts which negate the defense. *See* commentary to H.R.S. §§ 701–115 and 710–1040.

■■■ The jury instruction given by the district court failed to place on the government the burden of proving absence of coercion. Although the court instructed the jury that the government had the burden of proving beyond a reasonable doubt every essential element of the offense charged, the absence of coercion was not identified as such an element. Without an instruction to the contrary, the jury could well have believed that because coercion was a defense, the burden of proof thereon was on the defendant. We do not agree, however, that this error requires reversal. Our review of the record convinces us that Bertman failed to present any evidence whatsoever sufficient to entitle him to an instruction on the defense of coercion. Since he was not entitled to an instruction, the one given, even though erroneous, could only have benefited him. Under these circumstances, the error was harmless. *See United States v. Shoup*, 608 F.2d 950, 964 (3rd Cir. 1979); *United States v. Furr*, 528 F.2d 578, 580 (5th Cir. 1976). *See also United States v. Pheaster*, 544 F.2d 353, 363 n.3 (9th Cir. 1976); *United States v. Rea*, 532 F.2d 147, 149 (9th Cir. 1976); *United States v. Winter*, 663 F.2d 1120, 1142 (1st Cir. 1981); *United States v. Thomas*, 567 F.2d 638, 641 (5th Cir. 1978).

Hawaii law offers little if no guidance as to what constitutes coercion for purposes of H.R.S. § 710–1040(2). We need not decide this question, however, as the district court gave, and Bertman agreed to, a jury in-

struction defining coercion as "either actual, direct or positive, where physical force is put upon a man to compel him to do and act against his will, or implied where the relation of the parties is such that one is under subject[ion] to another … and is thereby constrained to do what his free will would refuse." Bertman's testimony, even if believed, established only that he acquiesced in Carson's insistent bribe solicitations so as not to jeopardize his chances for obtaining commission approval of his application to import Coors beer. However, the fact that Bertman may have believed that Carson exercised influence with the Liquor Commission and could cause the rejection or approval of his application does not, in our view, amount to Bertman's being under subjection to Carson. More important, Bertman presented no evidence whatsoever that he was constrained by Carson to do what his free will would have refused. Bertman was at all times free to resist Carson's solicitations and instead to report them to the police or to Carson's superiors. Obtaining a favorable recommendation from Carson, however, was more important to him than resisting the bribe requests, and he freely chose the course that most benefited his economic interests. Because there were legal alternatives available to him—which he refused solely because he saw financial advantage in yielding—he failed to show the requisite constraint by Carson on his free will.[4] *Cf., United States v. Colacurcio*, 659 F.2d 684, 690 (5th Cir. 1981) (defendants who failed to pursue available legal alternatives could not raise the defense of duress to a bribery charge under the Hobbs Act, 18 U.S.C. § 1951).

In sum, because Bertman did not present evidence at trial sufficient to entitle him to a jury instruction on the defense of coercion, the error in the instruction given by the district court was harmless. Bertman's conviction is therefore AFFIRMED.

---

**4.** Bertman testified that he did not report Carson's bribe solicitations to the Honolulu police because of the 1973 bugging incident. Whatever constraint Bertman may have felt as a consequence, however, did not stem from his relationship with Carson. Moreover, Bertman could still have reported Carson's attempted "shake down" to the liquor commissioner who first recommended that he contact Carson. When asked at trial why he failed to do so, he stated that it did not occur to him.